[No. G028379. Fourth Dist., Div. Three. Oct. 16, 2001.]

THAI BAO TRAN, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

1150

**COUNSEL**

Leslie H. Abramson for Petitioner.

Laurence M. Watson, County Counsel, and Ward Brady, Deputy County Counsel, for Respondent.

No appearance for Real Party in Interest.

**OPINION**

**O'LEARY, J.**—Thai Bao Tran petitioned for a writ of mandate to compel the superior court to grant his request for ancillary funding for his capital

murder case. We originally denied the petition summarily. Tran petitioned the Supreme Court for review, which that court granted. The Supreme Court ordered us to consider the petition on its merits, and we have complied.

Tran contends the trial court abused its discretion by denying him funding on the ground his retained counsel has adequate funds from the fee agreement to pay for those services. We grant the writ.

Tran was charged with capital murder, and his mother hired an attorney to represent him. After he was held to answer on the charge and the attorney was unsuccessful in an attempt to convince the district attorney to forgo the death penalty, the mother hired his present attorney, Leslie H. Abramson, to replace the first lawyer.

Abramson's fee of $300,000, as reflected in a written agreement between her and Tran's mother, included her services and those of second counsel through a first trial of the matter including the penalty phase. In the agreement, Abramson agreed to seek funds from the superior court for expert and investigative fees.

Six of Tran's relatives, including his mother, sister, three aunts, and a cousin, pooled money to pay the initial one-half of the fee amount, with the balance to be paid over 20 months from family members' salaries. Tran has been indigent at all times during the case; he has no ability to pay for any services for his defense.

Almost a year and a half after she had been retained, Abramson filed a "Confidential Application for Ancillary Defense Funds Pursuant to C.P.C. Section 987.9," requesting $17,369.70 for investigation, a psychological evaluation, an interpreter, and transcriber services. In the application, she detailed extensively the nature of the offense, her vast experience as a defense attorney handling many death penalty cases, Tran's indigency and her fee arrangement, and the nature of the ancillary services needed, why they were necessary, and why the amount requested for them was reasonable. She amply justified the request.

The court denied the motion without a hearing, finding that Abramson had been paid about $150,000 more than the maximum a court-appointed attorney would be paid for the same services. The court concluded, "[T]he defendant has sufficient funds available under the retainer agreement to cover costs of the requested ancillary services." The court offered a hearing to consider the matter further if counsel wished to be heard.

Abramson requested the hearing and submitted confidential points and authorities. In a declaration, she averred she would not have entered into an

agreement that obligated her to pay for ancillary services, she would not pay for such services if the court denied the motion, and forcing her to pay the expenses against her will would create an irreconcilable conflict of interest. She suggested she would be forced to withdraw if the motion were denied.

After a hearing, the court denied the motion again. Using standard rates and an estimated number of hours to be devoted to the case, the court calculated the fee a court-appointed lawyer would likely receive for the case, between $90,000 and $100,000.[1] The court concluded, "The fee paid to counsel in the present case, $300,000, exceeds the 'ordinary and customary charges in the community' by roughly $200,000. As such, the court finds that this defendant has the financial ability to pay for the . . . ancillary services."[2] In its order the court cited two out-of-state opinions, relying on a concurring opinion in one of them.

Tran contends the trial court abused its discretion when it denied him ancillary funding on the ground Abramson has adequate resources from the fee agreement to pay for the ancillary services. He reasons: (1) he is indigent; (2) he has no right or entitlement to the fee funds; and (3) Abramson has no obligation to expend funds from her fee for services she did not agree to provide as consideration for the fee. He is correct.

Penal Code section 987.9, subdivision (a) provides in relevant part: "In the trial of a capital case . . . the indigent defendant, through the defendant's counsel, may request the court for funds for the specific payment of investigators, experts, and others for the preparation or presentation of the defense. . . ." The statute has constitutional underpinnings. "The right to counsel includes the right to [ancillary services] that will assist counsel in preparing a defense." (*Anderson v. Justice Court* (1979) 99 Cal.App.3d 398, 401 [160 Cal.Rptr. 274]; accord, *Corenevsky v. Superior Court* (1984) 36 Cal.3d 307, 319 [204 Cal.Rptr. 165, 682 P.2d 360]; see also *People v. Worthy* (1980) 109 Cal.App.3d 514, 519 [167 Cal.Rptr. 402] [constitutional right to such services in noncapital cases; due process and equal protection are also implicated].)

The defendant must make an adequate showing of need for such services (*Corenevsky v. Superior Court, supra,* 36 Cal.3d at p. 320), but the

---

[1]The court's data actually spanned from $42,800 (which assumed 856 hours at $50 per hour) to $112,350 (which assumed 1,498 hours at $75 per hour). The court determined counsel would probably be compensated somewhere between a $50 rate and a $75 rate.

[2]The $200,000 figure was undoubtedly wrong, because the court failed to factor in the $50,000 Abramson set aside for second counsel, an amount the court had acknowledged was reasonable, even for appointed counsel. Indeed, Abramson had paid second counsel $57,000, more than had been budgeted, and she had already paid $3,232.86 in discovery costs. As we shall see, however, it is irrelevant whether the court thought Abramson had been overpaid by $200,000 or only about $143,000.

superior court does not question Tran's showing. The only issue is whether he is an "indigent defendant."

"[Penal Code section 987.9] does not limit application to cases where counsel has been appointed but to 'the indigent defendant.' Neither case law nor the Penal Code defines the term 'indigent defendant.' . . . [¶] . . . [T]he test of indigency for the purpose of funding investigators and experts is financial means to secure these services. If the family and friends of a defendant have no legal duty to support him, their financial means would ordinarily be entirely irrelevant. The fact that they employed counsel for him or gave him money would be relevant to whether he could afford to obtain investigative services. It would, however, be only one of many facts the court would consider in determining the question of financial ability." (*Anderson v. Justice Court, supra,* 99 Cal.App.3d at pp. 402-403.)

The Court of Appeal in *People v. Worthy, supra,* 109 Cal.App.3d at page 520, iterated the test similarly: "The test of entitlement to county assistance in defense preparation must be indigency. A test based upon the status of defense counsel would be constitutionally infirm. If a criminal defendant requires the services of investigators or scientific or medical experts to assist him in preparation of his defense, that assistance must be provided. Whether it is paid for by the government or by the defendant depends solely on the defendant's economic status."

The superior court reasons, as it did in its orders denying the motion, that because *his attorney* was paid more *by his relatives* than the "ordinary and customary charges in the community," *he* is not indigent. We disagree.

Tran, as the court apparently accepted, has no assets of his own. Payment of the retainer fee by his relatives to his attorney did not alter his indigency. (*Anderson v. Justice Court, supra,* 99 Cal.App.3d at pp. 402-403.) Only if some part of the money paid were deemed to be his, could he be considered not indigent.

Abramson entered into an agreement with Tran's relatives to defend him. It set out exactly what she would be paid, how it would be paid, and what services would be provided for the money. Those services did not include providing the ancillary services Abramson requested under Penal Code section 987.9. The money she received to render the services set forth in the agreement was hers, and she was not obligated to pay some of it for ancillary services.

Nothing in California law suggests a contrary analysis. In *Anderson v. Justice Court, supra,* 99 Cal.App.3d at page 403, the court noted in dictum

that the fact relatives hired counsel for the defendant or gave him money to do so would be relevant in determining his indigency. But the court stressed it was merely a factor, and did not suggest a lawyer's fee for direct legal services would be considered to be the defendant's assets. We presume the *Anderson* court merely meant such payment would be part of the inquiry to determine whether the defendant had other assets with which to secure ancillary services.[3]

To reach its conclusion, the superior court was relegated to out-of-state authority. It noted that in *State ex rel. Rojas v. Wilkes* (1995) 193 W.Va. 206 [455 S.E.2d 575], the West Virginia Supreme Court said that when third parties enable a indigent defendant to have private counsel, the court may properly inquire into "the reasonableness of the fee arrangement." (*Id.* at p. 577.)

But that court made the comment regarding the trial court's continuing ability and duty to reassess the defendant's indigent status and propriety of appointed counsel. (*State ex rel. Rojas v. Wilkes, supra,* 455 S.E.2d at p. 577.) It noted the defendant's indigent status was not in dispute and concluded the trial court had an obligation to provide him with funds for an expert even though his counsel was privately retained. (*Id.* at pp. 577-578.) Even if the court's comments about the reasonableness of the fee arrangement were somehow pertinent, they were, at best dictum.

The superior court also relied on a concurring opinion in *English v. Missildine* (Iowa 1981) 311 N.W.2d 292. The Iowa Supreme Court held that although private counsel had been retained for the indigent defendant, he had a right to state-financed investigative services. (*Id.* at p. 293.) The concurring justice opined, "When such an attorney asks for public compensation, I would require [her] to account for the use of [her] private retainer on the basis of the ordinary and customary charges in the community." (*Id.* at p. 295 (conc. opn. of Uhlenhopp, J.).)

The superior court used this concurring opinion in an out-of-state case to deny funding in Tran's case. ▇ Rote application of an ordinary-and-customary-charges test in cases where retained counsel seeks public funds for ancillary services is bad policy, however, and it is contrary to at least the tone of California precedent.

There are at least two problems if private counsel expects every retainer agreement will be scrutinized under a reasonableness test: (1) it would

---

[3]Similarly, the court in *People v. Worthy, supra,* 109 Cal.App.3d at page 520, made this observation: "We concur in the concept that if a defendant is able to pay counsel, by whatever means, his indigency has not been established." We do not believe the court intended any more than the *Anderson* court.

impinge on the ability of the free market economy to set the price for legal services; and (2) it would deter many of the best, most experienced attorneys from taking privately retained cases without charging for ancillary services. In those cases in which the family could not afford the attorney's fee *and* the cost of ancillary services, the public would end up paying for both instead of just the ancillary services. Moreover, a reasonableness test would interfere with the principle that, when possible, a defendant should be afforded retained counsel of choice.

In this last regard, California law suggests a reasonableness test based on ordinary and customary charges is improper. In *Taylor v. Superior Court* (1985) 168 Cal.App.3d 1217 [215 Cal.Rptr. 73], the indigent defendant sought ancillary services from the court. The trial court concluded he was entitled to the services only if he discharged his volunteer counsel and accepted representation from court-appointed counsel.

In issuing its writ, the court reasoned, "The problem with this position is the resulting interference with the defendant's right to choose his own counsel which has been described as 'one of this nation's most fundamental freedoms.' [Citation.] In [*Maxwell v. Superior Court* (1982) 30 Cal.3d 606, 623 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333]], the court reviewed cases which 'limit severely the judge's discretion to intrude on defendant's choice of counsel in order to eliminate potential conflicts, ensure adequate representation, or serve judicial convenience' [citation] and reiterated its explanation that ' " ' once counsel is appointed [or undertakes] to represent an indigent defendant, whether it be the public defender or a volunteer private attorney, the parties enter into an attorney-client relationship which is no less inviolable than if counsel had been retained. To hold otherwise would be to subject that relationship to an unwarranted and invidious discrimination arising merely from the poverty of the accused.' " ' [Citation.]" (*Taylor v. Superior Court, supra,* 168 Cal.App.3d at p. 1220.)

"[A]n indigent defendant does not have the right to insist upon the appointment of a particular attorney. It does not follow, however, that the court's discretion to interfere with counsel already serving is the same as the court's discretion to choose an attorney when requested by an indigent defendant to appoint counsel. Even in the latter situation, the court may abuse its discretion where it ignores the significance of an already established attorney-client relationship. [Citation.] When the defendant is already represented by counsel, the court has no authority based upon its discretion to appoint and . . . has severely limited discretion to intrude in the established attorney-client relationship." (*Taylor v. Superior Court, supra,* 168 Cal.App.3d at p. 1220.)

Although the superior court did not attempt to foist appointed counsel on Tran, its ruling impinged on his right to counsel of his choice. Abramson told the trial court she might withdraw rather than pay for the ancillary services out of her own pocket. If she were to withdraw, Tran would face the same situation as the defendant in *Taylor*, court-appointed counsel as a condition of ancillary services.

And, as Abramson noted to the superior court, staying on the case puts her in a conflicted position. She has a duty to defend Tran competently and vigorously, but every dollar paid for ancillary services is a dollar taken from the fee for her services. In that sense, the case is analogous to *People v. Barboza* (1981) 29 Cal.3d 375 [173 Cal.Rptr. 458, 627 P.2d 188].

In *Barboza*, the public defender's office received an annual salary, out of which it had to pay for outside counsel when it declared a conflict of interest. (*People v. Barboza, supra,* 29 Cal.3d at pp. 378-379.) The Supreme Court found the arrangement itself created a conflict of interest: "The contract here expressly places the public defender in a situation in which, potentially, his financial interests—both personal and professional—oppose the interests of certain of his client-defendants. He, personally, will be liable for any deficiency existing in the reserve account at the end of each contract year. . . . [¶] . . . [¶] No matter how well-intentioned the public defender might be, the contract places him in a situation with grave consequences and implications for the administration of justice. Not only is there an 'appearance of impropriety,' there is also a real and insoluble tension, created by the contract, between the defender's conflicting interests." (*Id.* at pp. 380-381.)

Based on all of these considerations, rote application of an ordinary-and-customary-charges test is inappropriate. When the trial court engages in that inquiry, it effectively rewrites a contract and forces counsel to underwrite defense expenses or face at least a potential conflict. Trial courts should hesitate to put defense counsel or the case at such a risk.

Some scrutiny is nevertheless appropriate. If counsel's fee is so high it exceeds the bounds of reason or shocks the conscience, given the nature of the case involved, the court may reasonably conclude the amount paid was not solely for lawyering services, and that—in essence—fraud or similar improper conduct was being practiced on the court. In such circumstances, the court may conclude some of the money was not intended as compensation, but was money held for the benefit of the defendant's defense expenses. (See generally *Calistoga Civic Club v. City of Calistoga* (1983) 143 Cal.App.3d 111, 117 [191 Cal.Rptr. 571] [constructive trust is a remedy to enable entity entitled to property to receive from one who wrongfully holds it].)

We caution, however, that the court should not make such a finding merely because the fee is unusually high. It should not impinge on the upper range of fees upon which parties dealing at arm's length might agree.

In this case, the fee charged did not exceed the bounds of reason or shock the conscience. Taking into account Abramson's payment of second counsel and over $3,000 in miscellaneous expenses and assuming she spends the number of hours on the case the court estimated she would, her hourly rate would be just over $200.

■ Even if an ordinary-and-customary-services test were appropriate, the superior court applied it improperly. The trial court determined what that fee would be by considering what a court-appointed attorney receives for a capital case. The appropriate benchmark is what privately retained counsel receives for such a case. (See Pen. Code, § 987.3 [among other factors, an appropriate fee for *court-appointed* counsel is to be determined by reference to the "[c]ustomary fee in the community for similar services rendered by *privately retained* counsel to a *nonindigent* client" (italics added)].)

We stress our ruling is limited, and we do not wish to discourage trial courts from conserving the public fisc as long as the rights of the defendant are protected. This is not a case where defense counsel agreed to pay for ancillary services. Nor is it a case where counsel charged a high fee to handle the case through the preliminary hearing and then sought appointment in superior court. Tran was not rendered indigent by paying a large fee, and nothing suggests he transferred property or did anything else to become indigent.

Let a peremptory writ issue commanding the superior court to vacate its orders denying Tran's application for ancillary services funds and to grant his application.

Sills, P. J., and Rylaarsdam, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 13, 2002.