Filed 1/29/21  P. v. Vigil CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B301572 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA085228) |
| v. | |
| PEDRO ANTONIO VIGIL, | |
| Defendant and Appellant. | |

APPEAL from the judgment of the Superior Court of Los Angeles County.  Richard Kirschner, Judge.  Affirmed.

Carlos A. Lloreda, Jr., for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Pedro Antonio Vigil was convicted of 10 sex offenses against his two minor daughters and sentenced to 25 years to life. Defendant contends the trial court erred in failing to rule on his request to represent himself and in failing to determine if he qualified to have substitute counsel appointed. Defendant also contends the court erred in denying his postverdict request for juror information.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged by information with five counts of committing a lewd act upon a child (Pen. Code, § 288, subd. (a); counts 1–5), one count of sexual intercourse or sodomy with a child 10 years old or younger (§ 288.7, subd. (a); count 6), and four counts of oral copulation or sexual penetration of a child 10 years old or younger (§ 288.7, subd. (b); counts 7–10). As to counts 1 through 5, a multiple victim special circumstance was alleged (§ 667.61, subds. (b) & (e)).

The charges were filed after an investigation of reports by defendant's two minor daughters who described numerous acts of sexual abuse by their father.

Defendant, represented by privately retained counsel, pled not guilty to all charges.

Shortly before trial, defendant filed a four-page handwritten document requesting substitution of counsel. Defendant asserted he was not receiving effective assistance from his retained lawyer. He said his lawyer had "ignored valuable information," failed to meet with him in jail to discuss his defense and pressured him to take a deal from the prosecution. Defendant also said his family had already paid $30,000 and the attorney was asking for another $10,000 to handle the trial

despite having done "practically nothing." Defendant concluded by saying he needed to replace his current lawyer with someone who would "defend [him] to the fullest extent of the law" or he would "go 'Pro-per.' "

At a hearing two weeks before the scheduled trial date, the court explained to defendant that since he had a privately retained lawyer, a hearing for substituted appointed counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 was not necessary. The court explained, "[h]owever, if you wish to discharge your lawyer and hire a new lawyer, you are able to do that if that's something you want to do, and if you want to represent yourself in this matter, you can do that as well."

The court then specifically asked defendant, "Do you want to represent yourself in this matter?" Defendant did not answer the court's question except to repeat he was dissatisfied with his lawyer, and he asked the court to "assign" him an attorney.

The court told defendant he had "the right to retain another lawyer if you wish, or a lawyer could be appointed for you." When the court asked defendant if he had contacted any lawyers to substitute in, defendant said, "No, not yet."

The court asked defendant if he had "any other requests" and defendant said no. Defendant never asked the court to appoint the public defender to represent him.

The court then briefly explained that because it was almost the eve of trial, it was not inclined to grant a continuance for the purpose of starting to look for a new lawyer. However, the court told defendant that if he obtained a new lawyer, the court would entertain any reasonable requests to continue the trial at that time.

The case proceeded to trial as scheduled with defendant represented by his retained attorney.

The jury found defendant guilty as charged.

The parties appeared for sentencing on July 24, 2019.  The court advised the parties it had been contacted by one of the jurors who had offered to pay for tickets to Disneyland for defendant's two daughters.  While the parties were discussing the matter, new counsel appeared (Attorney Lloreda) and stated on the record that he was substituting in as defendant's counsel. Defendant's trial counsel (Attorney Nadler) was allowed to withdraw.  Attorney Lloreda, after speaking with defendant, advised the court that the offer from the juror was rejected. Defendant's request for a continuance of the sentencing hearing was granted.

Citing the anonymous juror offer of Disneyland tickets, defendant filed a petition asking the court to unseal the juror identification information so he could investigate the possibility of juror misconduct during deliberations.  The prosecutor filed written opposition.  The court denied defendant's request, finding defendant's claim was speculative and no good cause had been shown.

Thereafter, the court sentenced defendant to 25 years to life on count 6, the base count.  The court imposed concurrent terms of 15 years to life on each of the remaining nine counts. The court imposed a protective order in favor of the two minor victims and imposed various statutory fines and fees.  Defendant was awarded 981 actual days of presentence custody credits.

This appeal followed.

## DISCUSSION

Defendant first contends the trial court erred in failing to rule on his request to proceed in propria persona. "In determining on appeal whether the defendant invoked the right to self-representation, we examine the entire record de novo." (*People v. Dent* (2003) 30 Cal.4th 213, 218.)

A request to proceed in propria persona must be clear and unequivocal. A criminal defendant's right of self-representation is waived unless the defendant " ' "articulately and unmistakably demand[s] to proceed pro se." ' " (*People v. Danks* (2004) 32 Cal.4th 269, 295.) In order to protect the Sixth Amendment right to counsel, "one of the trial court's tasks when confronted with a motion for self-representation is to determine whether the defendant truly desires to represent himself or herself." (*People v. Marshall* (1997) 15 Cal.4th 1, 23.) In so doing, "*courts must draw every inference against supposing that the defendant wishes to waive the right to counsel.*" (*Ibid.*, italics added.) Courts "should evaluate not only whether the defendant has stated the motion clearly, but also the defendant's conduct and other words. Because the court should draw every reasonable inference against waiver of the right to counsel, the defendant's conduct or words reflecting ambivalence about self-representation may support the court's decision to deny the defendant's motion. A motion for self-representation made in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay" may be denied without running afoul of the constitution. (*Ibid.*)

Defendant here did not make a clear and unequivocal demand to represent himself at trial. Defendant made only one brief reference in the document he submitted to the court to

5

"go[ing] 'Pro-per' " if he could not get a new lawyer. Defendant's focus, both in the written document and at the hearing, was on his dissatisfaction with his retained lawyer, not any demand to represent himself. When the court directly asked him if he wanted to represent himself, defendant did not say "yes"; instead, he repeated that he wanted new counsel. At no time did he say he wanted to represent himself.

Defendant also argues the court should have inquired as to whether he qualified to have appointed counsel. Defendant never suggested he could not afford to pay for the retained counsel of his choice. He expressed frustration in the document he filed with the court that his lawyer asked for more money to proceed to trial, but only in the context of underscoring the lawyer had already been paid $30,000 and had not done satisfactory work. Defendant never said he was indigent or suggested it had become a financial burden or hardship for him to pay for private counsel. The court told defendant a lawyer could be appointed to represent him, but defendant did not ask to be represented by the public defender. The dissent finds the trial court "abdicated its obligations to inquire about indigency," but defense counsel expressly disavowed at oral argument that defendant was indigent or sought appointment of the public defender.

Finally, defendant contends the court erred in denying his postverdict request to obtain juror information. A trial court's ruling on a motion for juror information pursuant to Code of Civil Procedure section 237 is reviewed under the deferential abuse of discretion standard. (*People v. Jones* (1998) 17 Cal.4th 279, 317; *People v. Johnson* (2013) 222 Cal.App.4th 486, 492.) There is no showing of abuse here.

A motion for juror information must be supported by a showing of good cause. (Code Civ. Proc., § 237, subd. (b) ["The petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information."].) Even if good cause is shown, the request shall be denied "if there is a showing on the record of facts that establish a compelling interest against disclosure." (*Ibid.*)

Defendant's motion consisted of a two-page declaration of counsel stating his need to investigate the circumstances of what led a juror to contact the district attorney's office and offer to pay for tickets to Disneyland for defendant's two daughters. He said, "It is imperative that these jurors be questioned in order to fathom just exactly what took place, including the circumstances of the juror's call to the D.A., and what possible prejudice my client has suffered as a result."

However, the juror did not call or otherwise contact the district attorney's office. The court told counsel a juror had *contacted the court,* not the prosecutor, to make the offer after being dismissed postverdict. Defendant's motion rested on a mischaracterization of the facts and speculation. The court acted well within its discretion in determining that good cause had not been shown.

## DISPOSITION

The judgment of conviction is affirmed.


GRIMES, J.


I CONCUR:

BIGELOW, P. J.


7

**STRATTON, J., Dissenting.**

No good deed goes unpunished. Or perhaps the court and appellant were two ships passing in the night. What may have been the trial court's attempt to patiently counsel appellant resulted in an abdication of the court's duty to ensure appellant's unequivocal exercise of his right to represent himself was knowing and voluntary. The trial court also violated appellant's right to counsel of his choice and his right to an inquiry into his indigence. These facts also show the mischief which may result when a *Faretta*[1] request is made in tandem with a request for substitution of counsel.

Three issues were implicated by appellant's motion: his right to discharge his retained counsel; his right to substitute appointed counsel; and his right to represent himself. The trial court violated the last two by failing to rule on appellant's requests. I dissent because the trial court failed to discharge its duties, ignoring appellant's clear and unequivocal requests for appointment of counsel, or, in the alternative, permission to proceed pro se.

A request to proceed pro se which is equivocal, untimely, insincere, made out of frustration, under a cloud of emotion, on a momentary caprice or for purposes of delay; or made by someone not competent to self-represent may be denied. (*People v. Butler* (2009) 47 Cal.4th 814, 825.) However, barring such circumstances, once an unequivocal, timely request is made, the trial court's duty is to advise the defendant of the dangers and disadvantages of self-representation to assure that the choice is

---

[1]  (*Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).)

1

made " 'with eyes open' " and to rule on the request. (*Faretta, supra,* 422 U.S. at p. 835.)

Similarly, a non-indigent defendant has the right to discharge retained counsel with or without cause. That right, however, is not absolute. The trial court may deny such a discharge motion if discharge will result in " 'significant prejudice' to the defendant [citation], or if it is not timely, . . . will result in 'disruption of the orderly process of justice.' " (*People v. Ortiz* (1990) 51 Cal.3d 975, 983 (*Ortiz*); *People v. Lara* (2001) 86 Cal.App.4th 139, 153 (*Lara*).) The court must exercise its discretion reasonably. "[W]e have never required a *nonindigent* criminal defendant to make [a showing of conflict or inadequate representation] in order to discharge his *retained* counsel." (*Ortiz*, at p. 984.)

Finally, an indigent defendant has the absolute right to appointed counsel. (*Gideon v. Wainwright* (1963) 372 U.S. 335.) The procedure to appoint counsel is set out in Penal Code section 987.2 and Government Code section 27707. It is the trial court's ultimate responsibility to determine indigence, but the public defender renders services to any person it determines to be indigent until such time a contrary decision is made by the court. (*People v. Longwith* (1981) 125 Cal.App.3d 400, 411, disapproved on other grounds, *People v. Barnum* (2003) 29 Cal.4th 1210; Gov. Code, § 27707.)

Here, one month before the trial date, appellant filed a written motion requesting discharge of his retained counsel or, in the alternative, the right to proceed pro se if the first request was denied. The motion was entitled, "Defendant's Motion to Substitute Counsel [Marsden] dated April 15, 2019." In the motion appellant stated his family "has paid my present attorney

2

nearly $30,000[] in the past year . . . and has practically nothing to contribute to my defense. . . . And now he is asking for an additional $10,000[] to take me to trial." After listing his complaints about counsel, appellant stated, "I need an attorney who will defend me to the fullest extent of the law, or I will go 'Pro-Per.'" The trial court did not find the motion was untimely, equivocal, insincere, made on a whim or for purposes of delay. Nor did the trial court find appellant not competent to represent himself. Instead, the record shows the trial court embarked on a colloquy with appellant that most likely misled him and surely missed the mark. Then, after the colloquy, the trial court made no ruling on either request and instead denied appellant's oral motion (a motion he did not make) to continue the trial date.

The trial court commenced the hearing with a statement that the parties were in court because appellant wrote a letter "indicating that you were dissatisfied with your retained lawyer and indicated that perhaps you wanted to represent yourself. That's the reason for this hearing today." The court first took up the issue of retained counsel and dogmatically informed appellant it could not discharge his retained attorney in the same way it could relieve appointed counsel via a *Marsden*[2] hearing. This is true. The trial court then told appellant he could discharge retained counsel himself. But advising appellant he could discharge counsel did not join the issue and moreover was not completely accurate. As *Ortiz* and *Lara* hold, the right to discharge retained counsel is not absolute and requires the court to exercise its discretion. The trial court misled appellant by

---

[2]     *People v. Marsden* (1970) 2 Cal.3d 118.

3

telling him he could basically "do it himself" when, in reality, the final decision rested in the court's discretion. Then, without making an express ruling, the trial court appeared to deny appellant's request to discharge his retained counsel without making the findings required by *Ortiz* and *Lara.* At best, the court's action could be construed as deferring a ruling. While the court talked about the importance of keeping the set trial date, it also volunteered to grant a continuance if appellant came in with newly retained counsel. From this I infer the trial court had no qualms about appellant's sincerity in making his request to be rid of retained counsel and did not believe there was an efficient administration of justice issue looming on the horizon.

While it may have made sense for the court to defer discharge of counsel until there was newly retained counsel actually in the courtroom ready to take on appellant's representation, in so proceeding the court ignored appellant's immediate second request for "assigned" counsel. As soon as the trial court informed appellant he could fire his lawyer himself, appellant himself asked the court to "assign" him new counsel and reiterated his concerns about counsel's preparedness.

Appellant had advised the court in his motion that his family had paid his attorney fees. As we know, payment of fees by relatives does not alter a defendant's indigency. (*Tran v. Superior Court* (2001) 92 Cal.App.4th 1149, 1154.) Orally, appellant directly asked the court to "assign" counsel. The trial court actually told appellant "a lawyer could be appointed for you" but inexplicably changed the subject and never followed up. Appellant should not have been treated any differently than any other defendant who requests appointment of counsel. The trial court should have invoked Penal Code section 987.2. It was put

4

on notice that appellant was not the one paying retained counsel. Instead, the court repeated its inability to replace private counsel because appellant was dissatisfied with his services, reiterated appellant could hire a different lawyer, and switching subjects, inquired of appellant what efforts he had made to locate new retained counsel to substitute in, telling appellant (gratuitously, because appellant had not asked for a continuance) that if he brought in new retained counsel, the court would grant a continuance for new counsel to prepare. While deferring the request to discharge retained counsel may have been efficient, contrary to its duty the trial court ended up failing to rule on appellant's request for "assigned" counsel, to make any findings, or to inquire at all about indigence.

Then, after seemingly denying appellant's request to discharge counsel, the trial court asked appellant, "[I]f you want to represent yourself in this matter, you can do that as well. [¶] Do you want to represent yourself in this matter?" Appellant did not answer the question posed, instead continuing the conversation the court had initiated about his primary request to substitute counsel. He asked the court to "assign" him a new attorney. The People argue appellant's non-response shows he had abandoned his *Faretta* request. I disagree.

Like the other explicit requests, the reporter's transcript reflects the trial court never ruled on the *Faretta* request. Yet, the clerk issued a minute order that "[d]efense oral motion to continue to obtain new counsel is denied" and defendant "does not want to proceed in propria persona." The reporter's transcript shows no oral motion to continue the trial nor a withdrawal of the request to appear pro se. The reporter's

5

transcript governs.  (*Cf. People v. Washington* (1994) 95 Cal.App.2d 454.)

On this record the majority concludes appellant's request was "equivocal."  I disagree as well.  There is nothing in the record that supports the conclusions that appellant was "equivocal" or, for that matter, abandoned his *Faretta* request.  Appellant's request was made in writing and states:  "I need an attorney who will defend me to the fullest extent of the law or I will go 'Pro-Per'."  There is little doubt appellant probably preferred being represented.  He persisted in inquiring about getting "assigned" counsel after the court said it had no power to discharge retained counsel.  "Conditioning" the request to go pro se on the denial of his motion to substitute counsel does not make the request equivocal.  (*People v. Joseph* (1983) 34 Cal.3d 936, 944, fn. 3 [motions to relieve counsel and to proceed pro se are often "tagged" together yet that coupling does not vitiate the fact that they are two separate motions].)  Indeed, the trial court here, as in *People v. Joseph*, acknowledged there were two separate requests.  For two separate requests, appellant was entitled to two separate rulings.

Moreover, in adhering to the subject of substitution of counsel rather than immediately pivoting to his secondary request to represent himself, appellant logically followed the colloquy initiated by the trial court.  When the court said it could not relieve retained counsel, appellant followed up with a request for "assigned" counsel.  That appellant did not immediately answer the court's out-of-context question "Do you want to represent yourself" can hardly be deemed a waiver or abandonment of his very explicit and timely request to proceed

6

pro se if he could not be rid of retained counsel. By rights he needed an answer to his first two requests first.

Nor can or should appellant's failure to return to the question render his request equivocal or abandoned. It is the trial court's obligation to act on requests for self-representation, not to change the subject. To put the onus on a defendant to re-raise an issue where, as here, the trial court led the inquiry into other areas not even raised by appellant without circling back to appellant's only remaining request— to go pro se—penalizes the defendant for following the lead of the trial court. *Faretta* does not hold that a defendant must repeat his specific request multiple times—even at the cost of interrupting or contradicting the court—to stave off a finding of abandonment or equivocation. Perhaps that *should* be the case when the trial court actively engages a defendant in discussing the pro se request itself. But that did not happen here.

Further, I find the court's persistence in returning to the question whether appellant was going to look for new retained counsel rendered it likely appellant perceived self-representation was not an available option in that courtroom. (*People v. Dent* (2003) 30 Cal.4th 213, 219 [defendant is not obliged to clarify that he was, indeed, making a *Faretta* motion where trial court denied it on erroneous grounds, leading defendant to perceive self-representation was not an option].)

We have a primer on what "equivocation" means in this context. In *People v. Marshall* (1977) 15 Cal.4th 1, our Supreme Court gave some examples: a mere impulsive response to the denial of a request for new counsel; a momentary caprice; the result of thinking out loud; a spur of the moment decision; impromptu disappointment in, or passing anger at, the court's

7

denial of a request to substitute counsel; demonstrated vacillation between wanting counsel and wanting to go pro se; acts creating any ambiguity as to the desire to self-represent. (*Id*. at pp. 23–24.)  The court considers not just the defendant's words, but also his actions.  As the *Marshall* court stated, the court must determine " ' "whether a defendant genuinely means what he says." ' "  (*Id*. at p. 23.)  The record here is devoid of any indication that appellant's request resembles these examples. Indeed, it is remarkably silent in this regard.

It is the duty of the trial court, not the defendant, to direct the *Faretta* inquiry so as to make the appropriate record that the defendant acts "with eyes open."  This behooves all courts not to blithely dismiss, without inquiry, explicit *Faretta* requests.  It also behooves us not to find that such requests, without further inquiry by the trial court, are equivocal or abandoned.  The trial wrongly deflected appellant's requests to obtain appointed counsel and to proceed pro se.  It abdicated its obligations to inquire about indigence and to embark on *Faretta* advisements, causing appellant to be represented at trial by counsel not of his choice.  Because such errors are prejudicial per se (*People v. Joseph*, *supra*, 34 Cal.3d at p. 948; *Lara*, *supra*, 86 Cal.App.4th at p. 153), I would reverse the convictions.


STRATTON, J.

8