[No. B217743. Second Dist., Div. Six. June 23, 2010.]

ARCHIE WILLIAM SCHAFFER, JR., Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Law Office of Anthony D. Zinnanti and Anthony D. Zinnanti for Petitioner.

No appearance for Respondent.

Gregory Totten, District Attorney, and Michelle J. Contois, Deputy District Attorney, for Real Party in Interest.

## OPINION

**COFFEE, J.**—Penal Code section 1054.1 requires the prosecution to disclose certain types of evidence and information to the defendant or to his or her attorney.[1] Here, a defendant who has retained counsel demands that the prosecution furnish him copies of these discoverable items free of charge. We conclude that section 1054.1 imposes no such duty on the prosecution. The People comply with section 1054.1 by affording the defendant an opportunity

---

[1] All statutory references are to the Penal Code unless otherwise stated.

to examine, inspect, or copy the discoverable items. A nonindigent defendant may receive at his or her own expense copies of discovery made available by the People.

Archie William Schaffer, Jr., seeks extraordinary relief to set aside an order of the superior court denying his motion to compel the People to provide copies of discovery mandated by section 1054.1 free of charge. We deny his petition.

## *PROCEDURAL BACKGROUND*

Schaffer was charged in a felony complaint with making criminal threats (§ 422), reckless driving (Veh. Code, § 23103, subd. (a)), and street terrorism (§ 186.22, subd. (a)). As to the first count, the People alleged that he committed the act for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), the Hells Angels Motorcycle Club, and personally used a firearm (§ 12022.5, subd. (a)). Schaffer is represented by privately retained counsel.

In May 2009, two days prior to the preliminary hearing, the prosecution informed Shaffer's counsel that 70 pages of telephone records and information were available as items for discovery. According to a written policy of the district attorney's office, photocopies of documents produced as part of the People's statutory discovery obligations are provided to the public defender and conflict defense attorneys at 3 cents per page. The office charges privately retained counsel a duplication fee of 15 cents per page. Defense counsel declining to purchase a copy may make arrangements to view discovery at the district attorney's office. In that event, the district attorney's office supervises the inspection of the materials disclosed to protect against fraud or theft. Alternatively, defendants or their counsel may bring photocopy or scanning equipment to the district attorney's office to photocopy or digitally scan the documents produced, or have a licensed photocopy service make copies. The district attorney's office charges $1.65 for duplication of cassette tapes and $5 for each "CD" or "DVD." Initial discovery packets in misdemeanor cases are provided at no charge, but copies of subsequent discovery materials are charged at the rates indicated above.

On May 15, 2009, the date set for the preliminary hearing, Schaffer's counsel filed, among other things, a motion to abate discovery costs. Schaffer moved to continue the preliminary hearing to permit his counsel time to

examine the discovery. His motion for a continuance was denied, but his counsel was permitted 20 minutes to review the discovery. Schaffer's counsel went to the district attorney's office to retrieve the discovery and was given an invoice in the amount of $10. Counsel declined to pay the bill and told the staff he had filed a motion to abate discovery costs. The district attorney's staff informed counsel that the discovery could be viewed in the lobby in the presence of an investigator, but the items could not be taken absent payment.

To avoid being tardy for the preliminary hearing, Schaffer's counsel returned to the courtroom without reviewing the discovery. Thereafter, Schaffer's counsel informed the trial court that, although the People did not intend to introduce at the preliminary hearing items included in the discovery packet, Schaffer was prejudiced because counsel had no choice but to proceed with the preliminary hearing without knowing whether or not there was exculpatory information in the discovery packet which could be introduced at the preliminary hearing. The prosecutor responded, "We're intending to provide discovery to the defense. Our obligation is to provide it, not necessarily copy it and send them copies. They can come and review it. Our policy is . . . to send copies of all the discovery, including audio CD's and the like, for the nominal fee of producing the discovery. It's not being used as a sword in any way."

The trial court deferred ruling on Schaffer's motion to abate the costs of discovery and, following the preliminary hearing, bound Schaffer over for trial. Schaffer's counsel states that he had no opportunity to cross-examine prosecution witnesses with respect to what was included in the discovery packet.

On June 24, 2009, the trial court conducted a hearing on Schaffer's motion to abate discovery costs. Schaffer's counsel argued that, to date, he had been billed a total of $185 in two matters ($40 in Schaffer's case). He noted that it was not practical for him to sit in the district attorney's office with his client, in the presence of the People's investigator, and review discovery documents. He stated, "If I had to interview my client in the course of reviewing the discovery, or if I had to talk to an expert . . . clearly any such conversation is going to be audible to any investigator for the People who's sitting there in the presence of reviewing the discovery. [¶] . . . I don't see how I can maintain an attorney-client privilege or generate . . . attorney-client work product while I have one of the People's investigators looking over me . . . ." Schaffer's counsel argued that the district attorney's policy of requiring the

defendant to pay for duplication of discovery depletes the resources needed to furnish a defense.

Schaffer's counsel further argued that if the trial court condoned the policy of the district attorney's office it would result in a plethora of discovery disputes the courts would have to resolve. He questioned whether the court would require the district attorney's office to come to his office and pay for duplication costs. He inquired how much the court would allow him to charge the People for duplication costs.

In opposition, the prosecutor argued, "We have a duty to disclose, not a duty to deliver. And the fees that are charged . . . are nominal. In dispute currently in this case is approximately $45 to $50 worth of discovery costs."

In denying the motion the trial court stated, "I don't see any deprivation of any significant rights of the defendant in the policy in general or in this case in particular based on what I've heard so far. [¶] And although there's no express statutory authority to do what the D.A.'s doing, I don't see any authority saying they can't do it either."

Schaffer's counsel then questioned the court as to whether he could charge the People for 400 pages of discovery he would be turning over. The court declined to answer his question, stating that "to ripen this issue, you need to tender the discovery and the D.A. needs to make a motion if they feel you're not tendering it properly."

In July 2009, petitioner filed the instant petition for a writ of mandate. On July 30, 2009, we summarily denied his petition. Thereafter, petitioner sought review of our order denying his petition in the California Supreme Court.

In September 2009, Schafer was tried by a jury and acquitted of three felony counts. The remaining counts were dismissed.

On October 16, 2009, the Supreme Court granted Schaffer's petition for review and transferred this matter back to us with instructions to issue an order to show cause as to why the imposition of a fee for cost of duplicating discovery materials subject to mandatory disclosure is permissible pursuant to section 1054 et seq.

*DISCUSSION*

Schaeffer contends the trial court erred in refusing to compel the district attorney's office to provide copies of discovery mandated by section 1054.1. He argues that "[p]roduction of discovery is a fundamental duty of both sides

in a criminal prosecution," and that no case or statute authorizes billing of costs associated with discovery in a criminal case. He contends the People's statutory obligation to disclose is only meaningful if the prosecutor provides copies of the documents to the defendant.

Schaffer disputes the People's contention that making the documents "available for review" satisfies the People's statutory obligation. "Availability" of the material for review here, he argues, entailed the full view of the prosecution's investigator. He suggests that permitting the prosecution to condition production of discovery on payment of costs or otherwise to limit review absent payment, "opens a proverbial 'Pandora's box,' which will ultimately serve to frustrate exchange of information and mire the courts in discovery cost disputes, all of which have nothing to do with the business of criminal courts." He argues that imposition of prosecution costs upon a defendant in other contexts has been disallowed. (See, e.g., *In re Sean R.* (1989) 214 Cal.App.3d 662 [262 Cal.Rptr. 884] [trial court has no authority to condition grant of continuance on payment of prosecution's witness fees].)

Preliminarily, the People assert that the issue raised in this petition is moot because Schaffer has since been acquitted of the criminal charges. Because the issue is a matter of public interest and may likely recur, we will resolve the issue. (*Abbott Ford, Inc. v. Superior Court* (1987) 43 Cal.3d 858, 868–869, fn. 8 [239 Cal.Rptr. 626, 741 P.2d 124]; *Beilenson v. Superior Court* (1996) 44 Cal.App.4th 944, 948–949 [52 Cal.Rptr.2d 357].)

The district attorney's office contends it may charge reasonable reproduction costs associated with the production of mandated discovery. The 15-cent duplication fee is the same fee charged by Ventura County for copies provided in response to California Public Records Act (Gov. Code, § 6250 et seq.) requests. The People state that at least 35 counties in California currently either charge a nominal fee for duplication of documents or digital media, or have an exchange program in place whereby defendants provide paper or digital media in exchange for copies reproduced on the same.[2] The People state that prosecutors' offices in several other states engage in similar cash or kind reimbursement for duplication of discovery items.[3]

---

[2] According to the People, these counties include Alpine, Amador, Calaveras, Colusa, Contra Costa, Del Norte, El Dorado, Imperial, Kern, Kings, Marin, Mendocino, Merced, Modoc, Mono, Monterey, Napa, Orange, Placer, Plumas, Riverside, Sacramento, San Diego, San Francisco, San Joaquin, San Luis Obispo, Santa Barbara, Santa Cruz, Sierra, Siskiyou, Sutter, Trinity, Tulare, Ventura, Yolo, and Yuba.

[3] According to the People, these states include Alabama, Alaska, Arizona, California, Colorado, Florida, Illinois, Iowa, Kansas, Kentucky, Maine, Michigan, Minnesota, Missouri, Montana, New York, North Dakota, Oklahoma, Oregon, Texas, and Wisconsin.

Federal prosecutors also charge a fee for duplication of discoverable materials. (See Fed. Rules Crim.Proc., rule 16(a)(1)(C), 18 U.S.C.A.; *U.S. v. Freedman* (11th Cir. 1982) 688 F.2d 1364, 1366–1367 [trial court abused its discretion in granting the defendants' discovery motion and requiring the government to supply at its expense copies of discovery documents for nonindigent defendants].)

In 1990, the voters of California adopted Proposition 115, the "Crime Victims Justice Reform Act." Proposition 115 added constitutional and statutory language authorizing reciprocal discovery in criminal cases and a new chapter in the Penal Code on the subject (§ 1054 et seq.). As a result of Proposition 115, discovery in criminal cases is now governed primarily by statutory law. (*In re Littlefield* (1993) 5 Cal.4th 122, 129–130 [19 Cal.Rptr.2d 248, 851 P.2d 42].) Section 1054 provides, in part, that the chapter shall be interpreted to promote the ascertainment of truth in trials by requiring timely pretrial discovery, to save court time by requiring that discovery be conducted informally between the parties before judicial enforcement is requested, and "[t]o provide that no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States."

Section 1054.1 provides that the prosecuting attorney "shall disclose" to the defendant certain materials and information listed in subdivisions (a) through (f) of that section. Section 1054.3 provides reciprocal discovery obligations for the defense. These statutes do not specify the means by which the parties must "disclose" discoverable information to each other, or specify that the party making disclosure must produce a copy of the discoverable item for the benefit of the opposing party. No court has interpreted the prosecutor's duty to disclose under section 1054.1 to include the responsibility of furnishing photocopies or other materials to a defendant at taxpayer expense. The ordinary meaning of the word "disclose" is to "divulge," "open up," "expose to view," or to "make known." (Webster's 3d New Internat. Dict. (1993) p. 645, capitalization omitted.)

Prior to the enactment of Proposition 115 and section 1054.1, criminal discovery was governed primarily by case authority. Two statutes that did govern discovery, former sections 859 (amended by Stats. 1985, ch. 877, § 1, p. 2820) and 1102.5 (repealed by 1990 legislative Prop. 115), both specified that the prosecution's discovery obligation could be fulfilled by making the information available "for inspection and copying." (See, e.g., the 1986 version of § 859 ["[t]he prosecuting attorney shall deliver to, or make accessible for inspection and copying by, the defendant or counsel, copies of the police, arrest, and crime reports, upon the first court appearance of counsel . . ."]; the 1986 version of § 1102.5 ["[t]he prosecution shall make

available to the defendant, as soon as practicable, all evidence, including the names, addresses and statements of witnesses, which was obtained or prepared as a consequence of obtaining any discovery or information pursuant to this section"].) Numerous cases discussing the prosecution's duty to disclose under former sections 859 and 1102.5 referred only to the duty to allow defendants to view, inspect, and copy the materials. (*Hill v. Superior Court* (1974) 10 Cal.3d 812, 817 [112 Cal.Rptr. 257, 518 P.2d 1353] [inspect]; *People v. Garner* (1961) 57 Cal.2d 135, 142 [18 Cal.Rptr. 40, 367 P.2d 680] [defense counsel entitled to "inspect, view, hear, or copy" statements made by defendant].) Enactment of the current discovery statutes, section 1054 et seq., did not alter the prosecution's duty to make discovery available.

■ Both the United States and California Supreme Courts have held that a criminal defendant does not possess a general constitutional right to discovery. "There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one . . . ." (*Weatherford v. Bursey* (1977) 429 U.S. 545, 559 [51 L.Ed.2d 30, 97 S.Ct. 837]; see *Gray v. Netherland* (1996) 518 U.S. 152, 168 [135 L.Ed.2d 457, 116 S.Ct. 2074]; *Alvarado v. Superior Court* (2000) 23 Cal.4th 1121, 1135 [99 Cal.Rptr.2d 149, 5 P.3d 203].) Instead, the Fourteenth Amendment compels "disclosure" of material evidence favorable to the defendant. (*Brady v. Maryland* (1963) 373 U.S. 83, 87 [10 L.Ed.2d 215, 83 S.Ct. 1194]; *District Attorney's Office for Third Judicial Dist. v. Osborne* (2009) 557 U.S. ___, ___ [174 L.Ed.2d 38, 129 S.Ct. 2308, 2319] ["[In *Brady*], we held that due process requires a prosecutor to disclose material exculpatory evidence to the defendant before trial."].) This principle is illustrated by cases approving "open file" discovery policies.

For example, in *People v. Zambrano* (2007) 41 Cal.4th 1082 [63 Cal.Rptr.3d 297, 163 P.3d 4], the defendant, in a death penalty case, contended he was prejudiced by the prosecutor's delay in disclosing a letter sent by his sister to the prosecutor expressing fear of the defendant, claiming he had been born insane, that he was incurable and untreatable, and he would kill again. The letter was discovered by the defense before the end of the guilt phase, but was not introduced at trial. The defendant was convicted of murder and sentenced to death.

■ On appeal, the defendant contended the prosecution's failure to disclose the letter constituted both a *Brady* violation and a violation of the criminal discovery statutes. The Supreme Court rejected the contention, noting that the letter to the prosecutor had been placed in the prosecutor's file and the prosecutor had invited the defense attorney to go through all the prosecutor's files to make sure that everything had been turned over to the defense. The court concluded that the prosecutor's open file policy complied with the prosecution's duty to disclose exculpatory evidence under the *Brady*

rule and also under the criminal discovery statute. "[T]he prosecutor's *Brady* obligation may, under proper circumstances, be satisfied by an 'open file' policy, under which defense counsel are free to examine all materials regarding the case that are in the prosecutor's possession. [Citations.] . . . [¶] . . . For all that appears, the letter was in the prosecutor's files, and would have been revealed by a timely, practicable examination of those files pursuant to the prosecutor's multiple invitations. Accordingly, defendant fails to demonstrate a *Brady* violation. Because we see no reason to assume the reciprocal discovery statute imposed greater burdens on the prosecutor, we reach a similar conclusion as to defendant's claim of a statutory violation."[4] (*People v. Zambrano, supra,* 41 Cal.4th at pp. 1134–1135, overruled on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 [87 Cal.Rptr.3d 209, 198 P.3d 11].)

So who pays for the costs of producing copies of discoverable materials when the prosecutor elects to provide access to the defense to inspect and read? The Attorney General recently concluded that unless the prosecutor voluntarily provides copies of discoverable materials without any agreement with the defendant as to payment of costs for producing those copies, the prosecutor is not under an obligation to provide copies, and payment for providing copies would require the mutual agreement of the parties. (85 Ops.Cal.Atty.Gen. 123 (2002).) The Attorney General reasoned that "[s]ection 1054.1 omits any duty by the prosecution to furnish copies of discoverable materials. It has long been held that the prosecution satisfies its burden of disclosure if the defense may inspect, view, hear, or copy discoverable materials. (See *People v. Garner* (1961) 57 Cal.2d 135, 142–143 [18 Cal.Rptr. 40, 367 P.2d 680]; see also *Joe Z. v. Superior Court* (1970) 3 Cal.3d 797, 803 [91 Cal.Rptr. 594, 478 P.2d 26] [defense may inspect and copy].) . . . It is sufficient, therefore, that the prosecution affords the defense the opportunity to inspect the materials, allowing the defense to make its own copies if it chooses." (85 Ops.Cal.Atty.Gen., *supra,* at p. 127.) The Attorney General opined that "[t]he prosecution and defense are free to negotiate and agree upon the payment of a fee for copies of discoverable materials. Nothing in the discovery statutes would prevent the prosecution and defense from reaching an agreement, reimbursing the prosecution for its costs of copying the materials." (*Id.* at p. 128.)

■ Section 987 authorizes the appointment of counsel for indigents in criminal cases. The responsibility for bearing the costs of providing legal services to indigent criminal defendants rests upon the county, either through the public defender, through its conflicts panel, or through its general fund.

---

[4] The court noted the result might be different if the prosecutor had used the policy to impose impracticable or unduly oppressive self-discovery burdens on the defense. (*People v. Zambrano, supra,* 41 Cal.4th at p. 1134.)

(§ 987.2, subd. (a) [cost of appointed counsel to be paid out of the general fund of the county].) The county is entitled to recoup those costs from indigent defendants who are later determined to have the ability to pay some or all of the costs of their defense. (§ 987.8.) Section 987.8 reflects a strong legislative policy of preserving scarce financial resources by shifting the costs of trial from the county taxpayers to the defendant when the defendant has the financial ability to pay some or all of those costs. (*People v. Smith* (2000) 81 Cal.App.4th 630, 641 [96 Cal.Rptr.2d 856].)

A criminal defendant who has established his indigent status is constitutionally entitled to those defense services for which he demonstrates a need. (*People v. Worthy* (1980) 109 Cal.App.3d 514, 520 [167 Cal.Rptr. 402].) Necessary expenses for a criminal defense can include discovery costs, investigative costs, transcript costs, expert fees, etc. (See § 987.8, subd. (g)(1) [" '[l]egal assistance' means legal counsel and supportive services including, but not limited to, medical and psychiatric examinations, investigative services, expert testimony, or any other form of services provided to assist the defendant in the preparation and presentation of defendant's case"].)

Just as a nonindigent criminal defendant can be required to pay for the costs associated with his defense, including attorney's fees, we conclude it does not offend the Constitution to require a nonindigent defendant to pay reasonable fees for duplicating discovery materials disclosed by the district attorney pursuant to section 1054.1.

In the event a defendant or his counsel chooses not to pay reasonable duplication fees, the district attorney must make reasonable accommodations for the defense to view the discoverable items in a manner that will protect attorney-client privileges and work product. There are many ways to achieve this. By way of example, the district attorney could allow the defendant and his counsel to view the items in private or in a discreet location where their conversation would not be overheard by the district attorney's staff but precautions could be made to protect against theft or destruction. We assume the parties and their counsel will conduct themselves according to the high standards the legal profession demands. Should any dispute arise over the accommodations, we are confident the trial court will know how to resolve it.

■ Here, Schaffer is represented by retained counsel. He moved the trial court to "abate" the discovery charges, but did not contend or demonstrate that he was indigent or otherwise entitled to have the county pay for the costs associated with his defense. The trial court did not err or abuse its discretion in denying his motion.

## *DISPOSITION*

The petition for a writ of mandate is denied. The order to show cause, having served its purpose, is discharged.

Gilbert, P. J., and Perren, J., concurred.

Petitioner's petition for review by the Supreme Court was denied October 13, 2010, S184988.