Filed 4/15/19

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>MARCUS TERELL WASHINGTON,<br><br>      Defendant and Appellant. | C084503<br><br>(Super. Ct. No. 15F06447) |

        APPEAL from a judgment of the Superior Court of Sacramento County, Michael G. Bowman, Judge. Affirmed.

        Stratton S. Barbee, Retained Counsel for Defendant and Appellant.

        Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Appellant.

---

[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II through V.

After an onlooker called 911 to report that defendant Marcus Terell Washington was walking with a pistol in his waistband and later waving it around inside a car, defendant fled on foot from responding police. Officers eventually arrested defendant and recovered a loaded magazine and a firearm in his path of flight. A jury found him guilty of being a felon in possession of a firearm and ammunition, and obstructing a peace officer during the lawful performance of his duties. Defendant admitted a strike prior and a prior prison term, and was sentenced to seven years in state prison.

On appeal, defendant contends that: (1) because he is indigent, the trial court abused its discretion in denying his motion for payment of costs for copying discovery, even though his retained counsel had access to the materials at the district attorney's office and the written retainer agreement between his mother and counsel provided for payment of routine costs and expenses; (2) the court violated his due process rights by denying him all relevant discovery before trial; (3) the prosecutor committed misconduct during her opening statement and closing remarks by referring to facts not supported by the evidence, and by misstating the law regarding possession of firearms by a felon; (4) insufficient evidence supports his possession convictions; and (5) the court abused its discretion by denying his motion for discovery of the personnel records of a police officer who was not present when defendant was apprehended and who did not testify at trial.

We will affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A.      *Defendant's Flight from Police and Subsequent Arrest*

On the morning of October 14, 2015, D.M. was repairing the roof of a duplex at the corner of 29th Street and Silk Court in Sacramento. While on the street retrieving materials for the repairs, he noticed a man with baggy blue jeans and a navy blue hoody or pullover jacket walking about 10 to 15 feet away; the man, whom D.M. later identified as defendant, was singing. D.M, who owned and was familiar with handguns, saw the handle of a black semiautomatic pistol in defendant's waistband near the right hip area.

2

Defendant got into the front passenger side door of a blue automobile parked on the street. Another man was in the driver's seat. After returning to the roof, D.M. saw defendant waving a gun around in the car through the open passenger side window. D.M. believed it was the same black pistol he had seen earlier in defendant's waistband. Concerned for the safety of himself and others, he called 911.

A short time later, Officers Jeffrey Carr and Aaron Thompson responded to the scene in separate patrol cars. They pulled their cars behind the blue car and ordered defendant and the driver out of the car at gunpoint.

According to Officer Thompson, defendant appeared to grab or put something underneath the front passenger seat. Defendant then exited the car, faced Officer Thompson, and raised both hands in the air, exposing his waistband; Officer Thompson did not see a firearm.

After ignoring Officer Thompson's commands to get on the ground and to not run, defendant turned and fled towards the cul-de-sac of Silk Court. As he fled, defendant grabbed his right pants pocket with his hand. Based on his training and experience, Officer Thompson testified to his belief that defendant was likely holding a gun so that it would not fall from the pocket of his baggy pants or shorts while he ran.

Officer Thompson followed defendant in his patrol car while Officer Carr detained the driver, E.D., without incident. Video from Officer Carr's patrol car camera was shown to the jury.

Officer Thompson saw defendant jump the front fence of a residence in the cul-de-sac of Silk Court and then flee through the backyard. He got out of his patrol car and ran to where defendant had jumped the fence. Officer Thompson watched as defendant jumped the home's backyard fence into an adjoining backyard of a home—either 7370 or 7374—on Nelmark Street. He then saw defendant jump over a third fence into the yard of a house on Gardendale Road.

3

While watching defendant flee, Officer Thompson radioed for backup officers to set up a perimeter in the area. Sergeant Ron Chesterman responded to the scene and located defendant on Gardendale Road. Defendant was kneeling in the middle of the street in front of 3071 Gardendale Road, the backyard of which is adjacent to the backyard of 7374 Nelmark Street. According to Sergeant Chesterman, defendant was wearing a white tank top with dark-colored baggy jean shorts. A black hooded sweatshirt lay in the street approximately 10 or 15 feet behind defendant.

Defendant was detained and searched. Officers did not locate a gun or ammunition on him. During a subsequent search of defendant's path of flight, Officer Thompson's canine located a loaded magazine containing eight nine-millimeter cartridges in the backyard of 7370 Nelmark Street, and Officer Carr found a black nine-millimeter handgun stashed in a tree in the side yard of the house at 3071 Gardendale Road. The pistol did not have a magazine in it.

The firearm was processed for possible fingerprints, but no latent prints were found. Two latent fingerprints were lifted from the magazine, but the prints lacked sufficient ridge detail for comparison.

B.    *Trial Proceedings*

Defendant was charged with being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1), count one),[1] possession of ammunition by a prohibited person (§ 30305, subd. (a)(1), count two), and obstructing, delaying, or interfering with a peace officer during the lawful performance of his duties (§ 148, subd. (a)(1), count three). It was further alleged that defendant had a prior strike (§§ 667, subds. (b)-(i), 1170.12), and had served a prior prison term (§ 667.5, subd. (b)).

---

[1] Further undesignated statutory references are to the Penal Code.

4

At trial, the responding officers and D.M. testified to the facts summarized above. For purposes of counts one and two, the possession offenses, defendant stipulated that he had a prior felony conviction.

Defendant did not testify, but he called Officer Leticia Izaguirre, who conducted a metal detector search in the yards of a house on Silk Court and a house on Nelmark Street, which were in defendant's path of flight. She testified that she did not find anything with the metal detector at either house.

Defendant also called E.D., the man detained in the driver's seat of the car. E.D., who admitted having a previous theft conviction, testified that he and defendant passed a marijuana joint back and forth in his car, but that he never saw defendant with a gun in his waistband or in his hand. During cross-examination, E.D. admitted that as an ex-felon, he was not allowed to be around firearms. He also conceded that snitches are often physically harmed, especially those in custody, as he was at the time he testified. On redirect, E.D. denied testifying that defendant did not have a gun to avoid getting in further trouble or being labeled a snitch.

C. *Verdict and Sentence*

The jury convicted defendant as charged, and he admitted the prior strike and prison term allegations. The court sentenced defendant to an aggregate term of seven years in state prison; three years for the felon in possession offense, which was doubled for the strike, one year for the prior prison term enhancement, and a concurrent 180 days for the misdemeanor obstruction offense. The court also imposed a two-year term, doubled to four years, for the possession of ammunition offense, but stayed the sentence under section 654.

5

DISCUSSION

I

*Discovery*

Defendant contends the trial court abused its discretion by refusing to order the county to provide copies of supplemental discovery to him at county expense. He argues that an indigent defendant with retained counsel is entitled to county coverage of ancillary expenses, including costs to copy discovery, regardless of whether a third party, who retained counsel for him under a written agreement, agreed to pay such costs.

A. *Background*

The court originally appointed the public defender to represent defendant, and the prosecutor provided discovery to his appointed counsel. Before the preliminary hearing, however, defendant's mother retained attorney Stratton S. Barbee to represent him. Defendant's public defender gave Barbee all previously produced discovery in the case.

The prosecutor later informed Barbee that supplemental discovery was available. Barbee moved to have the county pay approximately $50 to duplicate the additional paper and video discovery. Defendant's declaration supporting the motion stated he had been incarcerated since October 2015, was unemployed, and had no money or income. County counsel opposed the motion, arguing that discovery costs were not "ancillary services," the county was not required to pay for the cost of discovery when a defendant retained a private attorney, and defendant had failed to establish he was indigent. In reply, defendant maintained his indigence and reiterated that the county should have to pay to copy the supplemental discovery, which he asserted was necessary to prepare his defense.

At the hearing on the motion, the court questioned the need for the discovery and what precisely defendant sought. Because Barbee could not identify the material covered by the request for payment, the court denied the motion without prejudice. According to the court, it needed more information to determine what materials defendant requested at

6

taxpayer expense. During the hearing, Barbee acknowledged that he had viewed the supplemental discovery material at the district attorney's office.

Barbee later renewed the motion and identified the supplemental discovery subject to the request. It included: dashcam videos showing officers responding to the scene, at least one dashcam video showing defendant being taken into custody, various police reports and supplemental reports, information regarding the make and model of the gun, where it was purchased, and the results of fingerprinting the gun, as well as information on defendant's prior conviction.

At the hearing on the renewed motion, the court questioned why the county should pay for defendant's discovery costs when the retainer agreement between Barbee and defendant's mother envisioned that she would be responsible for such costs.[2] Citing the collateral source rule, Barbee argued that the court could not consider other sources of payment for the costs, including the retainer agreement. The court denied the motion, finding that these copying costs were a routine defense cost, and also that the terms of defendant's mother's retainer agreement made her responsible for the cost of duplicating the supplemental discovery.

Thereafter, defendant petitioned this court for a writ of mandate directing the trial court to order the county to pay his supplemental discovery costs, raising the same arguments he made below.[3] We summarily denied the petition. Defendant sought review in the Supreme Court, which also was denied. He now raises the issue on direct appeal.

---

[2] County counsel apparently brought the retainer agreement to the court's attention for the first time during an in-chambers conference before the hearing on the renewed motion.

[3] We grant defendant's request to take judicial notice of his writ petition. (Evid. Code, §§ 452, subd. (d), 459.)

7

B. *Analysis*

The trial court's order denying defendant's motion for payment of costs may be set aside only for abuse of discretion. (*Corenevsky v. Superior Court* (1984) 36 Cal.3d 307, 321 (*Corenevsky*); see also *People v. Alvarez* (1996) 14 Cal.4th 155, 234 ["[a]n appellate court reviews a trial court's ruling on an application to incur expenses to prepare or present a defense for abuse of discretion"].)

Discovery in criminal cases is governed primarily by statutory law. (*Schaffer v. Superior Court* (2010) 185 Cal.App.4th 1235, 1242 (*Schaffer*).) Section 1054.1 provides that the prosecuting attorney "shall disclose" to the defendant certain materials and information prior to trial. That information includes, among other things, the names and addresses of intended trial witnesses, statements of all defendants, all relevant real evidence seized or obtained while investigating the charged offenses, any exculpatory evidence, and relevant witness statements or reports of the statements of witnesses whom the prosecutor intends to call at trial. (§ 1054.1, subds. (a)-(f).)

Section 1054.1 does not specify the means by which the prosecution must " 'disclose' " discoverable information to a defendant. (*Schaffer, supra*, 185 Cal.App.4th at p. 1242.) But "[n]o court has interpreted the prosecutor's duty to disclose under section 1054.1 to include the responsibility of furnishing photocopies or other materials to a defendant at taxpayer expense." (*Ibid.*; see also 85 Ops.Cal.Atty.Gen. 123, 127 (2002) ["Section 1054.1 omits any duty by the prosecution to furnish copies of discoverable materials. It has long been held that the prosecution satisfies its burden of disclosure if the defense may inspect, view, hear, or copy discoverable materials"].)

The Sixth Amendment right to effective counsel includes the right to " 'ancillary services' " necessary to prepare a defense. (See *People v. Clark* (2016) 63 Cal.4th 522, 630 [federal and state Constitutional right to counsel includes the right to effective counsel which, in turn, includes the right to reasonably necessary defense services]; *People v. Faxel* (1979) 91 Cal.App.3d 327, 330 ["[t]he due process right of effective

8

counsel includes the right to ancillary services necessary in the preparation of a defense"].)

To be sure, "[n]ecessary expenses for a criminal defense can include *discovery costs*, investigative costs, transcript costs, expert fees, etc." (*Schaffer, supra*, 185 Cal.App.4th at p. 1245, italics added.) But defendant cites no authority for the proposition that routine copying costs like those sought here are a necessary expense. Even if we assume, however, that defendant was indigent and that the cost of duplicating this discovery constitutes a reimbursable ancillary service (a question the trial court did not directly address), the issue becomes whether defendant established that he was entitled to have *the county* fund such expenses in this case. Based upon the terms of the retainer agreement between defendant's mother and retained private counsel, the trial court found that he was not.

Defendant asserts that the retainer agreement between his mother and his counsel is irrelevant and that the trial court erred in relying on its terms to deny payment; he maintains that he only was required to prove he was indigent to gain entitlement to copies of discovery at county expense. Based on the record before us, we find no abuse of discretion in the trial court's ruling.

Contrary to defendant's argument, the terms of the retainer agreement between counsel and his mother are relevant in determining whether the county must pay for minor costs for duplicating discovery materials disclosed by the district attorney under section 1054.1.

Defendant cites *Tran v. Superior Court* (2001) 92 Cal.App.4th 1149 (*Tran*) for the proposition that an indigent defendant with counsel retained by a third party is entitled to have such ancillary defense services, including fees to copy discovery, paid for by the county. As the court in *Tran* recognized, however, the fact that a third party employed counsel for a defendant may be relevant to whether he could afford to obtain defense services. (*Id.* at pp. 1154-1155; see also *Anderson v. Justice Court* (1979) 99 Cal.App.3d

9

398, 403 [retention of attorney by family member is one of many facts a court may consider in determining the question of financial ability to secure ancillary services].) Thus, the trial court properly considered the terms of the retainer agreement between Barbee and defendant's mother in deciding the motion for discovery costs.

Notably, the court in *Tran* found the trial court erred in refusing to order payment for investigators and experts that were *not covered* by the retainer agreement between the defendant's relatives and the attorney retained on his behalf. (*Tran, supra*, 92 Cal.App.4th at pp. 1154-1156.) Here, by contrast, the trial court found that the minor costs for copying discovery *were covered* under the retainer agreement, and that defendant's mother, who was not indigent, was responsible for paying such costs. Given this material factual distinction, *Tran* does not control.

Defendant also cites *People v. Worthy* (1980) 109 Cal.App.3d 514 for the principle that defendant's indigence alone qualified him for full coverage of all necessary ancillary expenses. In *Worthy*, an indigent defendant was represented by a private attorney whom the defendant had agreed to pay, but who told the court he was "serving pro bono, because appellant was destitute." (*Id.* at p. 518.) The trial court denied a request for ancillary services, believing it had no power to allow them. (*Ibid.*) While acknowledging that there was no specific statutory authority for the requested relief, the Court of Appeal noted that trial courts have "inherent power to guarantee to criminal defendants a fair trial." (*Id.* at p. 521.) Since the defendant's indigent status was established, he was "constitutionally entitled to those defense services for which he demonstrate[d] a need." (*Id.* at p. 520.) He did not sacrifice this entitlement by appearing through private counsel: "The test of entitlement to county assistance in defense preparation must be indigency. A test based upon the status of defense counsel would be constitutionally infirm. If a criminal defendant requires the services of investigators or scientific or medical experts to assist him in preparation of his defense,

10

that assistance must be provided.  Whether it is paid for by the government or by the defendant depends solely on the defendant's economic status." (*Ibid.*)

*Worthy* also is distinguishable, however, insofar as it did not involve a written retainer agreement under which a third party agreed to pay routine expenses like those at issue here.

Nothing in the record before us shows the trial court's description of the retainer agreement's terms was inaccurate or otherwise incorrect.  Moreover, a copy of the retainer agreement was not included in the record on appeal.  Thus, we have no basis upon which to evaluate defendant's claim in his appellate briefs, contrary to the court's express finding, that the retainer agreement did not cover minor copying charges, or that defendant's mother was not responsible for such charges under the agreement. (*Corenevsky, supra*, 36 Cal.3d at p. 321 ["all intendments are indulged to support [the court's order] on matters as to which the record is silent"]; *People v. Clifton* (1969) 270 Cal.App.2d 860, 862 [" 'error is never presumed, but must be affirmatively shown, and the burden is upon the appellant to present a record showing it, any uncertainty in the record in that respect being resolved against him' "].)

Defendant's argument that the county is responsible under Government Code section 29602 for paying legal expenses of incarcerated defendants *regardless of indigence* also proves too much.  Government Code section 29602 provides in relevant part that the "expenses necessarily incurred in the support of persons charged with or convicted of a crime and committed to the county jail . . . for . . . services in relation to criminal proceedings for which no specific compensation is prescribed by law are county charges."  The county's obligation to pay for ancillary defense costs, however, is only triggered when that person is indigent and the costs are ordered by the court.  (§ 987, subd. (a) [if a criminal defendant in a noncapital case desires assistance of counsel and is unable to employ counsel, the court shall assign counsel to defend him or her]; § 987.2, subd. (a) [cost of appointed counsel to be paid out of the county general fund, subject to

11

court approval].) The practical effect of defendant's argument would be to make counties responsible for every ancillary service requested by a criminal defendant, regardless of necessity or ability to pay. No court has ever endorsed such a broad application of Government Code section 29602.[4]

We also reject defendant's equal protection argument. He contends indigent defendants with appointed counsel are given free discovery whereas indigent defendants with retained counsel are not. Not so. The fact that minor discovery costs were covered by a retainer agreement means defendant was not similarly situated to indigent defendants whose ancillary defense costs were not covered by such an agreement. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [under the equal protection clause, we do not inquire "whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged' "].) The fact that the expenses were already covered, *not* the fact that defendant had private counsel, was the decisive factor.[5]

---

[4] *Corenevsky*, which cited Government Code section 29602 as a basis for finding a county auditor had authority to pay for court-ordered defense costs (*Corenevsky, supra*, 36 Cal.3d at p. 324), does not stand for the sweeping proposition defendant urges. That case concerns the extent to which an *indigent* defendant has a right to ancillary defense services at public expense. (*Id.* at p. 312.) The issue of payment arose only after the county refused to pay $13,314 ordered for appointed experts. (*Id.* at p. 316.) The Court of Appeal relied upon Government Code section 29602 as the funding mechanism. It said: "Expenses under Government Code section 29602 are 'county charges' that shall be paid by the county auditor without regard to the existence of a specific appropriation . . . ." (*Corenevsky, supra*, at p. 316.) The case also is factually distinguishable because there was no agreement by a third party to cover the expenses like there is here. If this collateral source of payment did not exist, then Government Code section 29602 might require the county to pay court-ordered duplication costs, but that is not the case before us.

[5] We emphasize that the trial court did not rule that defendant was not entitled to county assistance for any ancillary services simply because his mother had retained private counsel for him. Indeed, defendant concedes that the county paid for a private

12

Finally, even assuming for the sake of argument that the court erred in denying defendant's motion for discovery costs, " '[i]t is settled that an accused must demonstrate that prejudice resulted from a trial court's error in denying discovery.' " (*People v. Gaines* (2009) 46 Cal.4th 172, 181 (*Gaines*).) The record belies defendant's claim of prejudice.

It is undisputed that defendant's counsel had access to all discovery, including the supplemental discovery, well before trial. Although counsel may have preferred to have his own copy of the supplemental discovery to review when he wanted, he admitted he had access to—and viewed—the discovery at the district attorney's office. (See *People v. Zambrano* (2007) 41 Cal.4th 1082, 1134 [defense counsel's ability to examine all materials regarding the case in a prosecutor's " 'open file' " sufficient to satisfy constitutional and statutory duty to disclose exculpatory evidence], disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *Schaffer, supra*, 185 Cal.App.4th at p. 1245 [reasonable accommodations for the defense to view discoverable material required where nonindigent defendant or his counsel chooses not to pay reasonable duplication costs]; 85 Ops.Cal.Atty.Gen. 123, 127, fn. 7 (2002) ["[i]t is sufficient [under section 1054.1] that the prosecution affords the defense the opportunity to inspect the materials, allowing the defense to make its own copies if it chooses"].)

The trial court denied defendant's renewed motion for payment of discovery costs in October 2016. Defendant's trial did not start until the end of February 2017—more than four months later. This amount of time is more than adequate to arrange to view approximately 100 pages of original and supplemental police reports and a few dashcam videos.

---

investigator to help him prepare for trial. The trial court's ruling was thus limited in scope.

13

II

*Due Process*

Defendant contends the trial court violated his due process rights by "forcing" him to proceed to trial without all relevant discovery. He also argues that the court unfairly relied on the retainer agreement's cost provision to deny his renewed motion for payment of discovery costs because county counsel raised the retainer agreement issue for the first time at the motion hearing. Neither contention has merit.

For the reasons discussed above, we conclude that the court did not compel defendant to proceed to trial without all relevant discovery. Defendant's retained counsel was given all of the discovery originally provided to the public defender, and he admittedly viewed the supplemental discovery at the district attorney's office, even if he did not receive copies of that supplemental material at county expense. Defense counsel thus had access to all relevant discovery, well in advance of trial.

Defendant's counsel, moreover, did not object when county counsel brought the retainer agreement to the court's attention. In the absence of a specific objection below, the argument is forfeited. (*People v. Partida* (2005) 37 Cal.4th 428, 433-434 [a defendant's failure to make a timely and specific objection on the ground asserted on appeal makes that ground not cognizable]; Evid. Code, § 353.) In any event, counsel responded on the merits, arguing that the court should not rely on the retainer agreement given the collateral source rule.[6] By addressing the retainer agreement on the merits

---

[6] The collateral source rule, on which defendant continues to rely, is inapplicable. Under the rule, "plaintiffs in personal injury actions can still recover full damages even though they already have received compensation for their injuries from such 'collateral sources' as medical insurance." (*Arambula v. Wells* (1999) 72 Cal.App.4th 1006, 1009.) Applying the rule in a criminal context would mean that defendant's retained counsel could be paid twice—once by the person who retained him and again by the county, since the retainer agreement would be considered a "collateral source." The county, however, is not akin to a tortfeasor recovering a windfall; the rule is plainly inapplicable.

14

without objection, defendant also waived any defect in notice.  (*Tate v. Superior Court* (1975) 45 Cal.App.3d 925, 930 [party that opposes motion on the merits waives any defects or irregularities in the notice of motion].)

Defendant's claim that he would have made additional arguments had the trial court not prematurely cut him off is also not persuasive.  Defense counsel had the opportunity to address the retainer agreement issue in chambers and in open court.  Counsel never requested more time or a continuance to address the issue, nor did he otherwise alert the court to any alleged additional arguments.  Defendant also never sought reconsideration of the court's ruling based on any new argument or different factual contention.  (*People v. Castello* (1998) 65 Cal.App.4th 1242, 1246 ["[i]n criminal cases there are few limits on a court's power to reconsider interim rulings"].)  He cannot now complain that he was not permitted to make all of his arguments below.

III

*Prosecutorial Misconduct*

Defendant contends the prosecutor committed multiple instances of prejudicial misconduct that rendered his trial fundamentally unfair.  The prosecutor's opening argument PowerPoint presentation, he claims, contained a slide that misrepresented the anticipated evidence against him.  He also argues that the prosecutor misled the jury on the law concerning possession of a firearm by an ex-felon when cross-examining E.D., asserting that the prosecutor "bullied a very unsophisticated witness into agreeing with an untrue proposition" to show he had a motive to lie about not seeing defendant with a gun.  He makes a similar misstatement of the law claim about the prosecutor's closing argument.

A.     *Prosecutor's Opening Statement*

Although not included in the record on appeal, it appears the prosecutor used a PowerPoint presentation during her opening statement that said Officer Carr saw defendant throw a gun into the tree.  Defendant contends this statement was untrue as no

15

reports or other evidence showed that any officer saw defendant toss a gun into the tree. Including such false information in the prosecutor's opening argument, in defendant's view, rendered his trial fundamentally unfair because it prejudicially suggested there was direct evidence of his guilt.

Before considering the merits of defendant's claim, we address the People's argument that defendant forfeited appellate review of his misconduct claim because defense counsel failed to interject a timely and specific objection below. Generally, " 'a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety.' " (*People v. Hill* (1998) 17 Cal.4th 800, 820.)

In this case, although defense counsel did ask for a sidebar conference during the prosecutor's opening statement, nothing in the record shows he objected during the sidebar to the allegedly false information in the PowerPoint presentation. The contents of the sidebar conference are not reported, and counsel did not place any objection on the record at the first break outside the jury's presence. Without evidence of a specific and timely objection, defendant forfeited his misconduct claim.

B.      *Cross-Examination of E.D.*

While cross-examining E.D., a convicted felon, the prosecutor asked several times whether he knew that he was not allowed to be around firearms. E.D. initially responded, "At the time I forgot," and further explained that he did not think he was on parole or probation the day of the incident. Upon further questioning, he conceded that he knew he was not allowed to be around firearms or have them in his car, and that it did not matter if someone else was holding the gun, if the gun was registered to another person, or if it was stolen.

During this exchange, defense counsel objected that the question whether E.D. knew he was not allowed to be around firearms was vague as to time, but counsel did not

16

otherwise object that the prosecutor's line of questioning misstated the law that prohibits ex-felons from possessing firearms. Later, defense counsel objected that the following question was argumentative: "So on that day even if you had been around a gun, you were not going to tell officers that you have been in the presence of a firearm." The court overruled the objection, and E.D. responded, "No."

A defendant may not complain of prosecutorial misconduct on appeal unless he timely objected on that basis below. (*People v. Fuiava* (2012) 53 Cal.4th 622, 685 [a defendant forfeited appellate review of claim that prosecutor committed misconduct during cross-examination where the defendant failed to object to the questioning at trial on the grounds raised on appeal].) The record shows defendant failed to lodge such an objection, and his vagueness and argumentative objections were not sufficient to preserve the issue for review. (*People v. Partida, supra*, 37 Cal.4th at p. 434 [to preserve an appellate challenge, a defendant must make a timely and *specific* objection on the same ground below].)

C.     *Prosecutor's Closing Argument*

During closing arguments, the prosecutor emphasized several credibility issues plaguing E.D.'s testimony, including that he was defendant's friend, that he was in custody when he testified and did not want to be known as a snitch, and that he knew he could not "be around guns." Immediately after the prosecutor's statement about guns, defense counsel objected and asked to approach.

Following an unreported discussion off the record, the prosecutor continued her closing remarks, clarifying that E.D. knew he could not "possess" a gun, and reminded the jury that it had received several instructions from the court about what that meant. She then emphasized that E.D. could not touch a gun, nor did he have the right to control a gun through another person.

Defendant argues that the prosecutor's statement that E.D. could not "be around guns" misled the jury as to the law regarding felons and firearms. Even if we assume the

17

objection was properly preserved, we need not decide whether the prosecutor misstated the law because any alleged error was harmless.

It appears the court immediately addressed counsel's objection given that the prosecutor subsequently argued to the jury that E.D. knew he could not "possess" a gun. Defense counsel also emphasized during his closing that there was no allegation that "[E.D.] was in possession of that gun at all," and, therefore, he had no reason to lie.

The court, moreover, had previously instructed the jury on the law of possession of a firearm by a felon since defendant was charged with that very offense. (CALCRIM No. 2511.) Thus, despite any purported misstatement by the prosecutor, the jury was correctly instructed on the law of possession.

The court further instructed the jury that it must follow the law as the court explained it. If the jury believed the attorneys' comments on the law conflicted with the court's instructions, the jury was expressly instructed that it had to follow the court's instructions and not the attorneys' statements. "Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions. [Citations.]" (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

On this record, there is no reasonable likelihood the remark complained of regarding the law on felons and firearms misled the jury, or was construed by the jury in an improper manner when evaluating E.D.'s credibility and his possible motive to lie about seeing defendant with a gun. (*People v. Samayoa* (1997) 15 Cal.4th 795, 843-844 [to the extent it was improper, there was no reasonable likelihood that the prosecution's line of argument misled the jury as to its task in determining whether defendant possessed the intent to kill].)

18

*Sufficiency of the Evidence*

Defendant contends insufficient evidence proved he possessed the firearm and ammunition recovered after his arrest. We conclude sufficient evidence supports his possession convictions.

When determining whether there is substantial evidence to support a conviction, we view the record in the light most favorable to the People, resolving all conflicts in the evidence and drawing all reasonable inferences in support of the conviction. (*People v. Campbell* (1994) 25 Cal.App.4th 402, 408; *People v. Small* (1988) 205 Cal.App.3d 319, 325 ["[t]he substantial evidence rule is generous to the respondent on appeal"].) " 'We may conclude that there is no substantial evidence in support of conviction only if it can be said that on the evidence presented no reasonable fact finder could find the defendant guilty on the theory presented.' " (*Campbell*, *supra*, at p. 408.)

To prove defendant was guilty of being a felon in possession of a firearm, the prosecutor had to show beyond a reasonable doubt that defendant possessed a firearm and that he had previously been convicted of a felony. (§ 29800, subd. (a)(1); *People v. Snyder* (1982) 32 Cal.3d 590, 592.) A "firearm" includes "any device designed to be used as a weapon, from which a projectile is expelled or discharged through a barrel by the force of an explosion or other form of combustion." (CALCRIM No. 2511.) Similarly, to prove the possession of ammunition by a felon charge, the prosecutor had to prove defendant possessed or had under his custody or control ammunition and that he had previously been convicted of a felony. (§ 30305, subd (a)(1).) "Ammunition" includes a bullet, cartridge, or magazine. (CALCRIM No. 2591.)

Defendant stipulated that he had a prior felony conviction, so the only issues remaining for the jury to decide for each of the charged offenses was his possession of the firearm or ammunition. A person has actual possession of a firearm or ammunition when they are in his immediate possession or control. He has constructive possession

when the contraband, while not in his actual possession, is nonetheless under his dominion and control, either directly or through others. (*People v. Peña* (1999) 74 Cal.App.4th 1078, 1083-1084; *People v. Williams* (2009) 170 Cal.App.4th 587, 625.)

Defendant argues insufficient evidence supports the jury's guilty verdicts because no usable fingerprints were found on the gun or ammunition, none of the officers saw him possess or discard the contraband, when he raised his jacket and exposed his waistband officers did not see a gun, no reasonable person possessing a firearm, especially a parolee, would wave a gun around and call attention to himself, and E.D. denied seeing defendant with a gun. He also characterizes D.M.'s testimony as not credible, claiming D.M. only *thought* he saw defendant with a gun, but that D.M. did not actually see him with a firearm. Finally, defendant emphasizes the fact that the ammunition and gun were not found immediately after he was taken into custody.

When viewed properly—in the light most favorable to the judgment—ample evidence and reasonable inferences from such evidence support the convictions.

D.M. testified that he saw a black semiautomatic pistol in defendant's waistband while he was walking down the street. From the roof on which he was working, D.M. clearly saw defendant waving the gun around while sitting in the passenger seat of E.D.'s car. D.M. was familiar with guns and he owned one. Furthermore, D.M. testified at trial that he was certain he saw the handle of black semiautomatic firearm in defendant's waistband. Based on D.M.'s testimony alone, the jury reasonably could have found that defendant possessed a firearm. (*People v. Richardson* (2008) 43 Cal.4th 959, 1030-1031 ["the testimony of a single witness is sufficient for the proof of any fact"]; CALCRIM No. 301.)

In addition to D.M.'s testimony, the jury also heard Officer Thompson testify that while he did not see defendant with a gun in his waistband or hand before he fled, he saw defendant holding his pants pocket as he ran away. Based on his more than 21 years of training and experience, he believed defendant was likely attempting to secure a gun so

20

that it would not fall out of his pocket while he ran. The jury could logically make the same reasonable inference.

By the same token, the jury was free to disbelieve E.D.'s conflicting testimony that defendant did not have a gun. The court instructed the jury with CALCRIM No. 226, which provides, "You alone must judge the credibility or believability of the witnesses," and with CALCRIM No. 302, which states, "If you determine there is a conflict in the evidence, you must decide what evidence, if any, to believe." Indeed, it is the exclusive province of the jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. (*People v. Jones* (1990) 51 Cal.3d 294, 314.)

On the record in this case, the jury could reasonably resolve the witness credibility issue in favor of the prosecution and against defendant. We must defer to the jury's credibility determination and cannot substitute our evaluation of a witness's credibility for that of the trier of fact. (*People v. Jones, supra,* 51 Cal.3d at p. 314.)

Furthermore, a firearm matching D.M.'s description of the firearm he saw defendant carrying was found in defendant's path of flight after he was apprehended. The black nine-millimeter gun was found without a magazine. A nine-millimeter magazine with cartridges was recovered nearby, also along defendant's escape route. Based on this evidence, the jury could reasonably infer that defendant discarded the magazine and the firearm as he fled from police. The fact that no fingerprints were found on the gun does not mean defendant did not handle it. A forensic investigator testified that the textured grip of the firearm recovered by police was not an ideal surface from which to recover fingerprints.

Finally, the jury could properly consider defendant's flight as evidence of his consciousness of guilt. (CALCRIM No. 372.) While defendant's flight alone was not sufficient to prove guilt, considered with the evidence discussed above, the jury was

21

amply justified in concluding beyond a reasonable doubt that defendant possessed the firearm and the ammunition found in his path of flight.

V

Pitchess *Motion/*Brady *Material*

Defendant contends the trial court improperly denied his motion to discover the personnel records of Officer Sam Blackmon, citing both state statutory disclosure requirements under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) and federal due process mandates under *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215] (*Brady*) to support his argument. Although the People contend defendant failed to satisfy *Pitchess*, they do not address defendant's *Brady* argument.

A.     *Background*

Before trial, defendant moved to discover complaints in Officer Blackmon's personnel files showing a propensity for dishonesty or misconduct. In support of the motion, defendant cited *Pitchess* and *Brady*.

Officer Blackmon was not present when Officer Thompson and Officer Carr initially contacted defendant, nor was he present when Sergeant Chesterman and his partner, Officer Kennedy, took him into custody on Gardendale Road. Instead, when Officer Blackmon arrived, he took a perimeter position and monitored radio updates from other responding officers. After defendant's arrest, Officer Blackmon transported him to jail.

Defendant requested Officer Blackmon's personnel files due to a perceived inconsistency between his report and Officer Kennedy's report. At the hearing on the discovery motion, however, the People advised the court that the prosecution did not intend to call Officer Blackmon to testify because he did not witness defendant's apprehension and arrest. After hearing argument from defense counsel on both *Pitchess* and *Brady*, the court denied the motion, finding Officer Blackmon was not a key witness in the case. In so ruling, the court stated: "I am mindful of the fact that there is no

requirement the information you are seeking be admissible in order to be discoverable . . . [b]ut you do have to demonstrate that the personnel records are material to the subject matter pending litigation. I simply find they're not in this particular case, as the witness is not a percipient witness to anything material to your client's guilt or innocence in this matter."[7]

Later, while discussing *Brady* material related to Officer Blackmon during in limine motions the first day of trial, the prosecutor confirmed that she did not intend to call Officer Blackmon as a witness. After noting that Officer Blackmon would likely be impeached by testimony from the officers who actually apprehended and arrested defendant, defense counsel stated that he had changed his strategy with respect to Officer Blackmon; for tactical reasons *he also did not intend to call Officer Blackmon* as a trial witness.

Officer Blackmon did not testify at trial. Sergeant Chesterman testified that he apprehended defendant in front of the Gardendale Road house, and Officer Carr testified that he found the firearm in a tree in the side yard of the same house.

B.     *Analysis*

The federal due process clause requires the prosecution to disclose evidence that is favorable and "material" to the defense. (*Brady, supra*, 373 U.S. at pp. 86-87.) Evidence is "material" under the *Brady* standard "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (*United States v. Bagley* (1985) 473 U.S. 667, 682 [87 L.Ed.2d 481, 494].) The prosecution's disclosure duty under *Brady* pertains not only to exculpatory evidence

---

[7] Although the court discussed *Brady* at times during the hearing, it later said it was "ruling on a *Pitchess* motion. My obligation is to rule on the *Pitchess* motion that's before me" when responding to defense counsel's point that *Pitchess* and *Brady* were different.

but also to impeachment evidence.  (*Strickler v. Greene* (1999) 527 U.S. 263, 280-281 [144 L.Ed.2d 286, 301].)

Under California law, a criminal defendant is entitled "to discovery of relevant documents or information in the confidential personnel records of a peace officer accused of misconduct against the defendant" if the defendant shows "good cause."  (*Gaines, supra*, 46 Cal.4th at p. 179; *Pitchess, supra*, 11 Cal.3d at pp. 536-537; Evid. Code, § 1043, subd. (b).)  "Good cause for discovery exists when the defendant shows both ' "materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.'  [Citation.]"  (*Gaines, supra*, 46 Cal.4th at p. 179.)  The statutory scheme that codified *Pitchess* " 'carefully balances two directly conflicting interests:  the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to the defense.' "  (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220.)

Thus, "[u]nlike the high court's constitutional materiality standard in *Brady*, which tests whether evidence is material to the fairness of trial, a defendant seeking *Pitchess* disclosure must, under statutory law, make a threshold showing of 'materiality,' " meaning "the information sought is material 'to the subject matter involved in the pending litigation.' "  (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 10.)

In this case, the trial court denied defendant's discovery request for lack of materiality because Officer Blackmon was not a percipient witness to any event that bore on whether defendant committed the charged offenses.  It is not clear from the court's ruling whether it found the information immaterial under both *Pitchess* and *Brady*, or whether the court decided the motion on *Pitchess* alone.

To the extent the court erred in failing to address *Brady* in its ruling, we conclude any omission was harmless.  "*Brady* . . . held that an accused is denied due process when the prosecution fails to disclose to the defense evidence that is favorable to the defendant and material on the issue of guilt."  (*City of Los Angeles v. Superior Court, supra*,

24

29 Cal.4th at p. 10.)  The record shows, however, that Officer Blackmon was not present when defendant was apprehended and arrested, and his police report does not claim that he was.  Instead, as the trial court noted, his report shows that he took a perimeter position and monitored radio traffic.

Officer Blackmon was not a percipient witness who could shed any light on defendant's guilt or innocence and was not called by the prosecution or defense.  His personnel records, then, were not constitutionally material under *Brady*.  On this record, we therefore find that there is no reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

For similar reasons, we conclude the court did not abuse its discretion under *Pitchess*.  (*Hinojosa v. Superior Court* (1976) 55 Cal.App.3d 692, 695-697 [defendants charged with assaulting several officers entitled to discover personnel records of those officers for evidence of bigotry or a proclivity for violence, but not the personnel records of other officers who were not the victims of the charged offenses and who took no part in the defendants' arrests].)  Defendant simply failed to satisfy *Pitchess*'s threshold materiality standard.

## DISPOSITION

The judgment is affirmed.

                                                    KRAUSE          , J.


We concur:


      RAYE          , P. J.


      ROBIE          , J.


25